THE SAMUEL E. SPRING.[1]

*(District Court, D. Massachusetts. December 15, 1886.)*

CARRIERS—OF GOODS—SHIPS—DAMAGE TO CARGO—LEAKY HOLD — OBLIGATION OF THE CARRIER.

The presence of a leak in a vessel's hold, and injury to the cargo in consequence, is sufficient to charge the carrier with negligence, unless it can be shown that the direct cause of the damage was a peril of the sea The ship is bound to provide the means necessary to enable her hold to be kept free from water, and will be liable for the failure in this regard, from whatever other cause it may occur.

Admiralty. Libel *in rem.*
*H. M. Rogers*, for libelant.
*A. A. Strout*, for claimant.

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

NELSON, J. The Samuel E. Spring sailed from Matanzas, Cuba, on the nineteenth of April, 1886, for Boston, having on board, as part of her cargo, 687 hogsheads of Muscovado sugar, the property of the libelant, the Continental Sugar Refinery. The cargo was properly stowed, and well dunnaged. The bill of lading was in the common form, containing the usual exception of the perils of the sea. On the fifth day out, in latitude 29 deg. N., it was discovered, on sounding the pumps, that there was three feet of water in the hold. The pumps had previously been sounded regularly every four hours without finding any more than the usual amount. A few hours pumping was sufficient to relieve the hold of the water, and no unusual quantity was made for the remainder of the voyage. She arrived in Boston May 7th, having met with no unusual weather on the passage. On discharging the cargo, the bottom tier of hogsheads, principally those stowed in the bilges, proved to be damaged by sea-water. No leak whatever could be found in any part of the ship, after a full examination. The libelant attempted to account for the undetected presence of the water in the hold by showing neglect to try the pumps, choking of the limber holes or water passages to the pump-well, and want of capacity of the pumps to lift the mixture of sea water and sugar drainings.

The evidence is hardly sufficient to prove either of these to have been the real cause of the damage. A more probable solution of the difficulty is this: Before sailing for Boston, the ship lay at Matanzas and Havana for 25 days, exposed to the hot tropical sun. The effect of this exposure was to cause a slight opening of the seams of the upper works, owing to the shrinkage of the outer planks. For the 24 hours next preceding the discovery of the water the ship had been beating, under full sail, against strong head winds, in a choppy sea. This caused a considerable list to leeward. The sides of the ship being submerged, the water entered through the open seems, and settled in the bilges, where it could not be reached by the pumps, so long as the list continued, or until a larger quantity had accumulated than had already entered. On the 24th the wind died out, and the ship righted. Then the water flowed to the pumps, and its presence became known. The action of the sea, and the cooler climate, will account for the closing of the seams before reaching Boston.

This is probably the true explanation of the way the leak occurred. If it is, the direct cause of the damage was not a peril of the sea within the exception, but the leaky and unseaworthy condition of the ship before sailing. But, in whatever manner the leak happened, the ship was bound to provide whatever means were necessary to enable the hold to be kept free from water. In either alternative, the ship must be held responsible for the damage. *The Centennial*, 7 Fed. Rep. 601; S. C. 2 Fed. Rep. 409.

Decree for the libelant.